IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEVE B. FERNANDEZ, | § § § | |
| *Plaintiff,* | § § | 5:23-CV-00342-RBF |
| vs. | § § § | |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY; | § § § § | |
| *Defendant.* | § § § § | |

**ORDER REVERSING AND REMANDING DECISION OF SOCIAL SECURITY COMMISSIONER**

This Order concerns Plaintiff Steve Fernandez's request for judicial review of the administrative denial of disability-insurance benefits under Title II of the Social Security Act. *See* Dkt. No. 1. This action was reassigned for disposition following all parties' consent to U.S. Magistrate Judge jurisdiction. *See* Dkt. Nos. 6 (Commissioner's consent), 9 (Plaintiff's consent) & 11 (transfer order). This Court has jurisdiction to review a final decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g).

On August 30, 2023, the Court held a hearing at which Plaintiff Fernandez and Defendant, the Commissioner of the Social Security Administration, appeared through counsel of record. *See* Dkt. No. 17. The Court ordered the parties to file additional briefing, which both parties did. *See* Dkt. Nos. 18, 19 & 20. For the reasons set forth below, the Commissioner's decision is **REVERSED,** and the case is **REMANDED** to the Administrative Law Judge (ALJ) for further consideration consistent with this order.

**Factual and Procedural Background**

Plaintiff Steve Fernandez filed his application for disability-insurance benefits on July 20, 2021, asserting disability as of August 17, 2017. *See* Dkt. No. 7 (Transcript of administrative proceedings, hereinafter "Tr.") at 185-191. Fernandez was 34 years old on his alleged disability onset date. Tr. at 31. He has a high school education and past relevant work as a juvenile-detention officer and security guard. *Id*. at 30-31, 209, 236-243. Fernandez is a Marine Corps veteran with 2 deployments and a history of depression and post-traumatic stress disorder (PTSD). *Id*. at 1243. Fernandez's application alleged disability due to a "bulging disc, carpal tunnel syndrome, arthritis, PTSD, meniscus tears in both knees, and sleep apnea." *Id*. at 80, 89. The agency denied Fernandez's claim initially and again upon reconsideration. *Id*. at 80-87, 89-97.

Fernandez requested and received a hearing with an ALJ. *Id*. at 42-78. The ALJ issued a decision on October 13, 2022, finding that Fernandez was not disabled. *Id*. at 15-37.

Among the matters considered at the hearing was a June 3, 2022, evaluation of Fernandez by Dr. Robert Troiano. *Id*. at 1698-1706. Dr. Troiano's evaluation noted he had treated Fernandez since 2020 for PTSD and major depressive disorder. *Id*. at 1699. Dr. Troiano opined that Fernandez had moderate limitations with, *inter alia*, understanding, remembering, and carrying out instructions, interacting with others, completing a normal workday or week without interruptions, performing at a consistent pace, adapting to changes, and managing stress. *See id*. at 1704-05. Dr. Troiano also concluded that Fernandez would be less than eighty percent efficient compared to the average worker. *Id.* at 1705. Dr. Troiano estimated that on four or more days per month, Fernandez would be unable to complete an eight-hour workday, and that he would likely be absent from work two or three days per month. *Id*. Ultimately, the ALJ

discounted Dr. Troiano's opinion as unpersuasive because, according to the ALJ, Dr. Troiano did not reference any objective mental-status examination findings and his opinion was both internally inconsistent and inconsistent with other evidence in the record. *Id.* at 29-30.

At step two of the sequential evaluation, the ALJ found that Fernandez's severe impairments were his degenerative disc disease, knee disorder, obesity, and carpal tunnel syndrome. *Id.* at 20. The ALJ found that Fernandez's diabetes, sleep apnea, hypertension, PTSD, anxiety, and depressive disorder were non-severe impairments. *Id.* at 20-21. The ALJ then found that Fernandez had the residual functional capacity to "perform sedentary work as defined in 20 C.F.R. section 404.1567(a) except the claimant is limited to occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; and frequent handling and fingering." *Id.* at 24. The ALJ did not include any limitations related to Fernandez's PTSD in the residual-functional-capacity finding. *See id.*

At the hearing, the ALJ asked the testifying vocational expert what jobs would be appropriate for a hypothetical person limited to sedentary work with occasional climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling with frequent handling and fingering (the same limitations as Fernandez). Tr. at 74. The expert testified that this hypothetical person could not perform Fernandez's past work but could perform work as an order clerk, surveillance monitor, or addresser. *Id.* The expert also testified that these jobs matched three specific job codes in the Dictionary of Occupational Titles ("DOT"). *Id.* The expert testified that there are 185,000 order clerk jobs, 140,000 surveillance monitor jobs, and 96,000 addresser jobs in the national economy. *Id.* at 74-75. The ALJ then asked the expert to include the additional limitations of only initiating and carrying out "simple, routine tasks" and "occasional interaction with the

public and co-workers" in the hypothetical-person scenario. Tr. at 75. The vocational expert responded that the jobs of surveillance monitor and addresser could still be performed by a hypothetical person with such limitations, but that the order clerk occupation would not be appropriate. *Id.*

In response to questioning by Fernandez's counsel asking where the job numbers for the specific identified jobs came from, the vocational expert testified, "I relied on the Bureau of Labor Statistics and the 2000 [inaudible] Census." Tr. at 76. Fernandez's counsel followed up, "So did you give us job numbers for the specific DOT code or is it broader than that?" *Id.* The vocational expert responded, "It's from the DOT code." *Id.*

In a post-hearing brief, Fernandez objected to the vocational expert's testimony regarding the occupation of surveillance monitor. Tr. at 286. Ultimately, the ALJ did not include the surveillance monitor job in her step-five findings. Tr. at 31-32. Fernandez's brief also objected to the job numbers provided by the vocational expert, and it pointed out that Skilltran's Job Browser Pro, a reliable electronic source recognized by the Social Security Administration, showed substantially lower job numbers for those specific jobs. Tr. at 286-87; *see also* Susan Swansiger, Use of Electronic Occupational References for Administrative Law Judge and Senior Attorney Adjudicator Decisions - UPDATE, SSA Memorandum, Dec. 28, 2009, https://skilltran.com/pubs/ssa_2009_ElectronicReferences.pdf. Skilltran is a "searchable copy of the DOT," but unlike the DOT it also includes estimated numbers of jobs in the national economy. *Id.; see also Ruenger v. Kijakazi,* 23 F.4th 760, 761 (7th Cir. 2022); *Purdy v. Berryhill,* 887 F.3d 7, 14-15 (1st Cir. 2018). The ALJ nevertheless incorporated the vocational expert's testimony regarding job numbers into her step-five findings. Tr. at 31-32.

Now, Plaintiff Fernandez raises three points of error. First, Fernandez argues that the ALJ erred in finding that Fernandez's PTSD was a non-severe impairment at step two, and that the resultant residual-functional-capacity assessment fails to include limitations related to that impairment. Dkt. No. 10 at 7. Second, Fernandez claims the ALJ failed to provide adequate reasons for rejecting the treating source opinion of Dr. Robert Troiano. *Id.* Finally, Fernandez argues that the ALJ's step-five determination that Fernandez can perform work that exists in significant numbers in the national economy is not based on substantial evidence. *Id.*

### Analysis

The ALJ's step-five determination that Plaintiff Fernandez can perform work that exists in significant numbers in the national economy was not based on substantial evidence. Accordingly, the Commissioner's decision is **REVERSED,** and this case is **REMANDED.** Because the Court finds that this error merits remand, it declines to address Fernandez's other two arguments seeking remand. On remand, however, the ALJ should take the opportunity—to the extent the ALJ deems appropriate—to consider whether the PTSD non-severity determination and concomitant residual-functional-capacity assessment warrant further development, and whether sufficient reasons were articulated for rejecting Dr. Troiano's opinion. The Court, however, takes no position on those issues at this time except to note the significant tension between Dr. Troiano's conclusions regarding Plaintiff's clinically diagnosed PTSD and the step-two non-severity finding for PTSD.

### A.     The Commissioner Has the Burden at Step Five.

At step five of the sequential analysis, the Commissioner has the burden to show that there are jobs a claimant can perform that exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2); *see also* 42 U.S.C. § 423(d)(2)(A). Sometimes this inquiry is

informed by reliable job information from publications such as, *inter alia*, the DOT and Census Reports. *See* 20 C.F.R. § 404.1566(d). The ALJ can also use testimony from a vocational expert, when necessary or helpful, to assist in this determination. *See* 20 C.F.R. § 404.1566(e). When vocational experts are used by the ALJ, the Social Security Vocational Expert Handbook explains that the experts should be prepared to cite, explain, and furnish any sources they relied upon to support or formulate their testimony. *See* Soc. Sec. Admin., *Vocational Expert Handbook* (Aug. 2017), https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE)_Handbook-508.pdf, at 3, 19-20, 28, 31, 38. Vocational-expert testimony must also itself must be reliable, and the ALJ's overall findings must be based on and supported by substantial evidence. *See Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1022 (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

For the Commissioner to carry the step-five burden in a given case, there must be a logical bridge between the conclusion that jobs exist in the economy in sufficient numbers and the evidence cited to support that conclusion. To further clarify, an ALJ's reference to only the DOT is not itself likely to be sufficient to build the needed bridge from evidence to conclusion because the DOT alone will not provide accurate job numbers. *Purdy,* 887 F.3d at 15. The DOT defines very specific jobs and explains their requirements. *See Ruenger,* 23 F.4th at 761. But the DOT does not itself estimate job numbers in the national economy. *Id.* at 762; *Purdy,* 887 F.3d at 14-15 ("The DOT just *defines* jobs, however; it does not report how many such jobs are available in the economy." (emphasis in original, quotation omitted, and cleaned up)).

Second, the Census Report in combination with only the DOT job codes also may not be sufficient for bridge building because these sources of information may not line up. Although the Census Report provides an estimate of job numbers in the national economy, those job numbers do not correlate to specific jobs identified by the DOT. *See Purdy*, 887 F.3d at 15. The Census Report instead provides the number of jobs in the economy organized by Census code. *Guiton v. Colvin*, 546 Fed. Appx. 137, 141 (4th Cir. 2013). And Census codes "are broader designations than DOT codes," meaning that "a single census code may comprise numerous DOT-coded occupations." *Id.* In other words, without more information or explanation the DOT codes and the Census Report information may not line up.

Third, information from the Bureau of Labor Statistics also suffers from a similar shortcoming. This information does not provide job numbers for specific DOT codes because the information uses standard occupational classification ("SOC") codes that are, once again, broader than DOT codes. *Ruenger*, 23 F.4th at 762; *May 2020 National Occupational Employment and Wage Estimates,* U.S. Bureau of Labor Statistics, https://www.bls.gov/oes/current/oes_nat.htm (last visited February 12, 2024). Because these statistics provide job numbers for broader categories of jobs, the job numbers are not necessarily reliable when applied to specific DOT jobs absent further information or explanation.

**B.   The Commissioner Failed to Carry Her Step-Five Burden.**

The Commissioner did not carry her burden at step five because the ALJ did not base her step-five determination on substantial evidence. Instead, further explanation or additional information was needed, but never provided, to support the ALJ's step-five conclusion made in reliance on testimony from the vocational expert. Although, as mentioned, an ALJ may of course rely on the testimony of a vocational expert, *see* 20 C.F.R. § 404.1560(c)(2); 42 U.S.C.

§ 423(d)(2)(A); *see also Fraga*, 810 F.2d at 1301-02; *Selders*, 914 F.2d at 618; Dkt. No. 20 at 1 (citing *Fraga*, 810 F.2d at 1304), the evidence, including that testimony, must ultimately provide substantial evidence upon which the ALJ could rely. Here, the vocational expert's testimony fell short.

At the hearing, the vocational expert testified, in response to questioning by Fernandez's counsel about the expert's job-numbers, that "I relied on the Bureau of Labor Statistics and the 2000 [inaudible] Census." Tr. at 76. When Fernandez's counsel followed up by asking, "So did you give us job numbers for the specific DOT code or is it broader than that?" the vocational expert responded, "It's *from* the DOT code." *Id.* (emphasis added). This answer is problematic.

If the vocational expert actually meant that the job numbers came *from* the DOT, this statement does little to clarify matters. The DOT doesn't provide job numbers, and the Bureau of Labor Statistics and Census Report only provide job numbers for broader categories of jobs. *Ruenger*, 23 F.4th at 761-62; *Purdy*, 887 F.3d at 14-15; *Guiton*, 546 F. App'x. at 141.

And if the vocational expert meant that the job numbers provided corresponded to jobs *only* for the positions identified by the specific DOT codes at issue, this also presents a problem, as Plaintiff points out in his brief. The problem is that according to Skilltran, as cited by Plaintiff in his brief, there are only 986 order clerk jobs and 3,327 addresser jobs. Dkt. No. 19 at 7. The Commissioner doesn't dispute that these are the actual figures on Skilltran for these jobs. And yet when Plaintiff raised this issue in a post hearing brief, the ALJ didn't address it. This is no small discrepancy. The numbers cited by the vocational expert for these jobs were 185,000 and 96,000, respectively.

Work exists in the national economy only when there are significant numbers in one or more *specific* occupations that a claimant can perform, not in broader *categories* that contain

8

jobs which a claimant could not perform. *See* 20 C.F.R. § 404.1566(b); *cf. Purdy*, 887 F.3d at 16 ("The [vocational expert] . . . testified that the job numbers were . . . specific to jobs, not to broad amalgams of jobs, some of which an applicant might be able to perform but not others."). Here, without further explanation or information, there is no way for the Court to know if the vocational expert had additional information or expertise that supported the job numbers provided or if the numbers provided were for categories broader than the two DOT job codes at issue. In short, a vocational expert and ALJ cannot without further explanation rely *only* on aggregate numbers for groups of jobs to show that a significant number of two specific DOT-coded jobs exist in the national economy.

A vocational expert's testimony, particularly if it goes unchallenged, could surely sometimes alone suffice as substantial evidence to support an ALJ's job-numbers finding. *See Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005); *Biestek*, 139 S.Ct. at 1155 (absent objection at the hearing, a VE's "testimony may qualify as substantial evidence even when unaccompanied by supporting data."). But here the vocational expert's testimony was something of a *non sequitur*. It might be that the vocational expert simply misspoke. Perhaps she meant to say something to the effect that "the job numbers provided correlate to the specific DOT codes" instead of saying the job numbers provided were "from the DOT code." Tr. at 76. But the Court cannot merely assume this. And saying the job numbers provided were "from" the DOT code raises the possibility that the expert didn't realize the risk of providing job numbers for categories broader than the two specific job codes. Moreover, Plaintiff's counsel questioned the vocational expert and raised the issue of reliable job numbers, and then filed a post-hearing brief to emphasize the concern. The ALJ and vocational expert should therefore have cleared up the issue before the ALJ relied on the expert's testimony. *See Ripley v. Charter*, 67 F.3d 552, 557

(5th Cir. 1995) ("The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified. (footnotes omitted)).

### C. The Error Was Not Harmless.

The ALJ's error in relying on the vocational expert's testimony affected Fernandez's substantial rights. *See Shinseki v. Sanders,* 556 U.S. 396, 407-08 (2009). Without reliable job numbers for the two specific jobs that the ALJ found Fernandez could perform, the ALJ's step-five finding was not based on substantial evidence. Reliable evidence about the numbers of jobs in the national economy would inform the ALJ's step-five analysis and could impact the ultimate outcome of Fernandez's case.

### Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** to the Administrative Law Judge.

**IT IS SO ORDERED**.

SIGNED this 28th day of February, 2024.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE